STATE OF CONNECTICUT *v.* ROBERT VALLE
(AC 23348)

Schaller, West and Mihalakos, Js.

Argued November 17, 2003—officially released February 17, 2004

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Toni M. Smith-Rosario*, assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *David R. Shannon*, assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Robert C. Valle, appeals from the judgment of conviction, rendered after a jury trial, of four counts of sale of a hallucinogenic substance in violation of General Statutes §§ 21a-277 (a) and 53a-8, and one count of conspiracy to sell a hallucinogenic substance in violation of General Statutes §§ 21a-277 (a) and 53a-48. On appeal, he claims that the trial court improperly instructed the jury (1) on the use of circumstantial evidence from which it could infer the intent elements of accessory liability, (2) by including the definition of "knowingly" in its accessory charge and (3) by failing to charge that he must have shared with his coconspirators the intent *to sell a hallucinogenic sub-*

*stance*, in those precise terms. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant arranged to sell "Ecstasy," a hallucinogenic substance, on four separate occasions to a cooperating witness in an undercover operation in Danbury spanning from September 26 to October 18, 2001. In each instance, the defendant used his cellular telephone to discuss the time and terms of the drug sales. The cooperating witness then met the defendant or his agent at the defendant's place of business, and the transaction was conducted outside the defendant's presence. The jury found the defendant guilty on all counts. The court thereafter granted the defendant's motion for a judgment of acquittal as to three counts of conspiracy to sell a hallucinogenic substance. This appeal followed. Additional facts will be set forth as needed.

Because the defendant failed to take an exception to the court's instructions on accessorial liability and the crime of conspiracy, he requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), for each of his claims.[1] Finding the first two *Golding* prongs satisfied in each instance, we will review all three claims under *Golding*. See id.

Additionally, we note the standard of review for the three claims presented. "The standard of review for constitutional claims of improper jury instructions is

---

[1] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

well settled. In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 128, 836 A.2d 224 (2003).

I

The defendant first claims that the court's instructions on the use of circumstantial evidence unconstitutionally diluted the state's burden of proof for the elements of accessorial liability. Specifically, he argues that the court misled the jury by permitting it to infer the intent necessary to establish accessorial liability through the use of a standard of "reason, experience and common sense," rather than through the use of the required reasonable doubt standard.[2] We disagree.

[2] The court charged the jury in relevant part as follows: "[B]efore you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in light of reason, experience and common sense. . . . [T]he state must prove *beyond a reasonable doubt each and every element* necessary to constitute the crime charged. . . . A person is criminally liable for a criminal act if he directly commits it or if he is an accessory . . . . This basic principle is stated in General Statutes § 53a-8 (a) of the Penal Code, which provides as follows . . . . Thus, you must find that the state has proven *beyond a reasonable doubt* that the defendant assisted another in selling a hallucinogenic substance. You must also find *beyond a reasonable doubt* that the defendant had the intent to commit the crime charged and did request, command or intentionally aid another in selling a hallucinogenic substance to find the defendant criminally liable under [§ 53a-8 (a)]. . . . What a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. . . . The only way in which a jury can ordinarily determine what a person's purpose, intention or knowledge

Although we review the claim under *Golding*, it fails to satisfy *Golding*'s third prong because the alleged constitutional violation does not clearly exist. "[W]here a group of facts are relied upon for proof of an element of the crime it is their cumulative impact that is to be weighed in deciding whether the standard of proof beyond a reasonable doubt has been met and each individual fact need not be proved in accordance with that standard. It is only where a single fact is essential to proof of an element, however, such as identification by means of fingerprint evidence, that such evidence must support the inference of that fact beyond a reasonable doubt. . . . Inferences of subordinate facts relied on cumulatively for proof of an element of a crime ordinarily need not be proved by any standard other than common sense. When a particular fact is essential to establish such an element, however, that fact must be proved in accordance with the reasonable doubt standard." (Citation omitted; internal quotation marks omitted.) *State* v. *Otero*, 49 Conn. App. 459, 466, 715 A.2d 782, cert. denied, 247 Conn. 910, 719 A.2d 905 (1998).

Nowhere does the defendant argue that the jury's findings on the intent elements of accessorial liability were dependent on one particular fact that had to be proved beyond a reasonable doubt. Moreover, the court properly defined the intent elements of accessorial liability and instructed the jury that the state had to prove beyond a reasonable doubt each and every element of the crimes charged. We therefore conclude that it is not reasonably possible that the jury was misled by the court's instruction on the use of circumstantial evidence to infer the intent elements of accessorial liability.

was at any given time, aside from that person's own statements or testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct and from that infer what his purpose, intention or knowledge was. . . . [T]hat inference drawn [must comply] with the standards for inferences as explained in connection with my instruction on circumstantial evidence." (Emphasis added.)

## II

The defendant next claims that the court improperly included the definition of "knowingly," which is found in General Statutes § 53a-3 (12), in its instruction on accessorial liability.[3] He argues that the inclusion of that definition unconstitutionally reduced the burden of proof required to establish accessorial liability. We disagree.

The defendant's claim fails to satisfy the third prong of *Golding* because the alleged constitutional violation does not clearly exist. See *State* v. *Golding*, supra, 213 Conn. 239–40. It is not reasonably possible that the jury was misled by the court's instruction on the definition of "knowingly" as part of the overall accessory charge because, as was clearly explained to the jury, the state had to prove the intent element of the underlying offense, sale of a hallucinogenic substance, to establish accessorial liability. The court defined accessorial liability as set out in § 53a-8 (a) and instructed the jury that to find the defendant guilty as an accessory, it must find that he acted with the mental state necessary to

---

[3] The court instructed the jury in relevant part as follows: "To establish the guilt of a defendant as an accessory for assisting in the criminal act of another, the state must prove criminality of intent and community of unlawful purpose. That is, for the defendant to be guilty as an accessory, it must be established that *he acted with the mental state necessary to commit the crime charged* and that in furtherance of the crime he requested, commanded or *intentionally aided* the principal to commit the crime. . . . A person acts *intentionally* with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct. A person acts *knowingly* with respect to conduct or circumstances described by a statute defining an offense when he is aware that his conduct is of such nature or that such . . . circumstances exist. . . . For you to find the defendant guilty of being an accessory to the sale of a hallucinogenic substance, the state must prove the following elements beyond a reasonable doubt: One, that the defendant *knowingly* sold a substance to another person; two, that the substance is a hallucinogenic substance; and, three, that the defendant *knew* the hallucinogenic character of the substance." (Emphasis added.)

commit the crime charged and that he requested, commanded or intentionally aided the principal to commit the crime. Because the defendant must have *knowingly* sold the substance in question to commit a sale offense in violation of § 21a-277 (a),[4] it was proper for the court to instruct the jury on the definition of "knowingly" as part of its accessory charge. We therefore conclude that it is not reasonably possible that the jury was misled by the court's instruction.

### III

The defendant's final claim is that the court improperly failed to instruct the jury that he must have shared with his coconspirators the specific intent *to sell a hallucinogenic substance*, in those exact terms, to be found guilty of the crime of conspiracy to sell a hallucinogenic substance. He argues that it is reasonably possible that the jury was misled by the court's general references to "specific intent to violate the law" and intent "to engage in conduct constituting a crime" as part of its conspiracy charge. We disagree.

The defendant's claim fails to satisfy the third prong of *Golding* because the alleged constitutional violation does not clearly exist. See id. It is not reasonably possible that the jury was misled by the court's instructions. First, the court properly recited the elements of the crime of conspiracy as set out in § 53a-

---

[4] See *State* v. *Mahon*, 53 Conn. App. 231, 235–36, 729 A.2d 242 (1999). We note, as a matter of clarification, that the court improperly instructed the jury as to a third element of the offense of sale of a hallucinogenic substance, specifically that the defendant knew of the hallucinogenic character of the substance. See footnote 3. It is well settled that "[t]o prove sale of a [hallucinogenic] substance, the state need not prove beyond a reasonable doubt that the defendant knew the character of the substance. . . . The state need prove only that the defendant knowingly sold the substance to another person and that the substance sold was a [hallucinogenic substance]." (Citation omitted.) *State* v. *Mahon*, supra, 235–36. The defendant does not claim on appeal that the court's instruction on the additional element harmed him, nor could he, since its inclusion could only have helped him. In giving this improper instruction, the court may have relied on our presentation of the elements of the offense of sale of a narcotic substance within 1500 feet of an elementary school, in violation of General Statutes § 21a-278a (b), in *State* v. *Lewis*, 67 Conn. App. 643, 647, 789 A.2d 519, cert. denied, 261 Conn.

48 (a).[5] Second, the defendant concedes that the court instructed the jury that he must have had the specific intent *to sell a hallucinogenic substance* to be found guilty of conspiracy to sell a hallucinogenic substance.[6] Third, we note that the court made it abundantly clear to the jury throughout its instructions that the underlying offense at issue was sale of a hallucinogenic substance.

The defendant's claim is without merit. It is not reasonably possible that the jury was misled by the court's instructions on the crime of conspiracy.

The judgment is affirmed.

In this opinion the other judges concurred.

938, 808 A.2d 1133 (2002). We take this opportunity to make clear that *State* v. *Mahon*, supra, 236, properly sets forth the two elements of a sale offense under § 21a-277 (a). Similar to the situation presented here, any statement to the contrary in *State* v. *Lewis*, supra, 647, was harmless.

[5] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, *with intent that conduct constituting a crime be performed*, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." (Emphasis added.)

[6] The court instructed the jury in relevant part as follows: "[I]n order to convict the defendant [of conspiracy to sell a hallucinogenic substance], the state must prove beyond a reasonable doubt that, one, he intentionally agreed with one or more other persons to engage in criminal conduct, i.e., selling a hallucinogenic substance; two, that any one of the alleged coconspirators did an overt act to further the object of the conspiracy, i.e., the sale of a hallucinogenic substance; and, three, that the defendant *intended to sell a hallucinogenic substance* . . . ." (Emphasis added.)